Your Honor, may it please the Court, my name is Philip Mann. I'm here on behalf of the plaintiff appellant, Ms. Alisa Apps, who is here in the courtroom with us. As a preliminary matter, Your Honor, we have submitted some sound recordings. This is a copyright case that involves two songs that we say are very, very similar. We have submitted sound recordings. I do not know whether the panel has had a chance to hear those yet. I've had a chance. Then in that case I will not, unless you want to hear it again, we're prepared to talk about it. They are good songs. Yes. But I'm tone deaf, so the sound recordings wouldn't necessarily help me. And I don't know that we would have the ability to overturn any decision that was made based on our listening to the recordings. Certainly, Your Honor. I just want to make sure that the Court has the opportunity to hear them. Okay. Thank you. I appreciate that. The district court made a very fundamental Are we talking about the recordings or are we talking about the words? The sheet music. That is a very good point, and that's the principal argument that we're making with the fundamental error by the district court here. There are two aspects to this copyright case. Ms. Apps has two copyright registrations. The first registration is on the Well, before we get that, what about UMGI being a proper defendant? Well, that is why the Court initially threw the case out. But significantly, the Court said even if you do have the proper defendant, I would still grant summary judgment because no matter who the defendant is in the district court's view, Ms. Apps doesn't have the case. Well, can't we affirm simply on the basis of UMGI not being a proper defendant under these circumstances? Well, that would be a dismissal without prejudice, and we would just come back with the same with a new defendant. Oh, it would be an affirmance. Pardon me? It would be an affirmance. It would be affirmance of the dismissal as to UMGI. It would not be a dismissal and would not be res judicata as to the proper defendant, whoever that is. Well, maybe or maybe not, depending on how much time has passed and whether or not you can substitute someone in. Well, but again, the significant factor in this case, Your Honor, is that the district court said regardless of who the defendant is, I would still grant summary judgment. So, I mean, the thing is if we do come in with a new defendant On the merits you lose. Exactly. I'm afraid that we'd just be back here in three years arguing the same things all over again. We're reviewing the denial of the leave to amend. Is that what you're doing? That's one of the denials. That's one of the issues that we've raised in our case. But we did go to the fundamental question of why. I guess I'm still struggling. How do we get to the merits if we don't have a proper defendant in the first place? Because one of our questions is did the district court, and I think we submitted some ninth circuit case law that says the freedom to amend the complaint should be granted freely. In circumstances like this, if you have, we're dealing with a company that has approximately 200 subsidiaries. Universal Music Group Inc. turns out not to be what it sounds like. They're saying the actual recordings are done by one of their 200-odd subsidiaries. So we said that the district court should have granted us leave to amend the complaint to grant to name the proper defendant. Ninth circuit law says that should be freely granted. The district court denied on the basis of futility. Futility. Exactly, Your Honor. Which then gets us to the merits. Is that your argument? Exactly, Your Honor. Let's go from there. I'm sorry it took so long to get there, but that's fundamentally what happens. Now, to get back to Judge Rader's question, there are two copyrights here. One is on the words and the music, and there's a separate copyright on the sound recording itself. These, I believe, are in the excerpts of the record at approximately 996 to 100 and something. Two copyright registrations. The district court looked only to the first one. The district court said the only issue here in this case is the words and the music, and the district court looked only to the words, I need to know now, and said, I need to know now is not a protectable phrase, and, therefore, black letter law, the case ends here. Ms. Epps has no case. Summary judgment granted. Get out of here. And this goes to your question, Your Honor. The district court, at least in its opinion, said absolutely nothing about the copyright on the sound recording and made no analysis whatsoever of the extensive evidence that we provided of the extrinsic, the objective similarities between the songs. We have a two-part test here in the Ninth Circuit. So before you go there, where in the complaint were there allegations made about the sound recordings as opposed to the sheet music? They were in there. I don't have the actual. Incidentally, I would like to reserve five minutes of my time. All right. Please be reminded that the time shown is your total time remaining. Because I thought the defendant's position was that in the complaint and throughout much of the proceedings, the focus was on the sheet music as opposed to the sound recordings. So that's why I ask you, where in the complaint? I will dig that out. That was definitely in the complaint, and the copyright registration on the sound recording was included as an exhibit in the complaint. Furthermore, when we responded to the motion for summary judgment, the bulk of our opposition to the motion for summary judgment was the sound recording. So the sound recording is not something that we brought into the case at the last minute. It was there from day one. It was an exhibit to the complaint. I'll try to dig out for you during my time what actual paragraph of the complaint says that. But that was definitely in the case from the start, and that was what this whole case is all about. Ms. Epps did not complain because somebody copied her written notation or her lyrics. She heard this song and said to herself, hey, that's a song I wrote six years ago. She recognized it as her very own. And this gets to the question of access. Not only was this a song that she had out there. She actually emailed a copy of her song to Tony Swain, who is an artist repertoire representative for Universal Music. The evidence in the case says that she emailed her song to Mr. Swain at Universal Music. He got it. He responded, sounds great, sounds really good. What is the evidence that Mr. Swain ever gave the song to anyone at Island Records? We don't have direct evidence of that other than his connection. But isn't that crucial? Well, no, Your Honor, because I respectfully disagree. Under the, I think it's the L.A. Print Text case, the cases say that access is evidence of copying. You never get it directly. You're never going to get somebody that's going to say, I witnessed this person copying the song, or you're not going to have a memo that says here's the secret plan to copy the song. Access and copying are proved by inference. So the L.A. Print Text case says I believe that access requires a reasonable possibility that the song, that they had access to the song and was copied. It doesn't have to be a bare possibility, but it has to be a reasonable possibility. You do not need mathematical certainty. You do not need proof beyond a reasonable doubt or anything like that. This is usually done inferentially, which gets us to the sliding scale business that we address. I'm sorry, Your Honor. I'm sorry, you look confused. My problem, are we talking about music or words? There are a handful of words that are the same. Are there notations that you can point to that show that the notes are the same? Yes. Yes, Your Honor. That's addressed in a lot of detail, I believe, at pages 15 through 19 of our opening brief. There is a listing of why the songs are the same. They're the same time measure, the same notes are used in the melody and so forth, that sort of thing. Okay. So you have the two songs on sheet music that you can look at and say these are exactly the same, that this was copied? Well, not exactly the same. But what we do have during one of the depositions, UMGI very helpfully transcribed both songs to the same key. So we're looking at, you know, here are the notes on I Need to Know, Ms. Appsong, and here are the notes on Love Me Again, Mr. Newman's song, and those are written down. So you can actually see and do a comparison. We, of course, say that there are similarities between them. UMGI points to the differences. Yeah, well, I'm not completely tone deaf. I'm not very musical. But they didn't sound very much alike to me. Well, again, Your Honor, that's why we have juries. I mean, it's not to ‑‑ I mean, this is a summary judgment case. Our whole position here is not that Ms. Apps should win, and we want this panel to say that Ms. Apps win. What we're asking for is can she have her day in court, because these are fundamentally factual issues. Well, you want a day before a jury because she's had her day in court. Exactly, exactly. But I wanted to call your attention to the Exhibit A that was attached to the complaint. It's at ER 729, and this is the certificate of registration. You want to get it? I could, Your Honor. Okay. Just a hint. When you're arguing before the court, you should always have your record available. I'm sorry, what page is that again? 729. So this is the exhibit that you referenced being attached to the complaint. 729. All right. So there it says the nature of the work is words and music. Does that denote sound recordings? That does not denote a sound recording. So I ask you about whether or not the sound recordings were included in the complaint, and you told me that the registration was attached and that would denote the recordings, but it doesn't appear that that's so. I don't know about that, Your Honor. I'll have to check that. But I know we did bring it into the case long before the case was ---- I'm just going on what you told me, that it was attached to the complaint, and that's the attachment to the complaint. I'll review that, Your Honor. If I misspoke, I'm terribly sorry about that. But I do know that the sound recording registration was brought into the case, and it was considered by the court and was something we argued. And was there any further questions? Well, since you mentioned that, could you look at your complaint then, which is starting at page 721, and point me to where the sound recordings allegations may be found? Thank you, Your Honor. I think there are general allegations here that the Newman song sounded like her song. What paragraph are we looking at? Or what page? Well, we're looking at pages 724, bottom of 724. Okay. And on 725, where it says, demonstrative video clip that compares the songs can be found at a particular website, a YouTube video. All right. That's your strongest argument, that the sound recordings were included. In the complaint? Yes. I believe so, Your Honor. All right. Thank you, counsel. Thank you. May I preserve my remaining time? Of course. Thank you. Good morning, Your Honors. My name is Jeff Goldblatt. I'm representing Universal Music Group, Inc. This is a case where the court does not need to consider any novel issues. The case can be resolved simply based upon the limited record before it and based upon the court's established precedence. Briefly on the issue of the wrong defendant being named, that obviously is a simple issue the court could rule on. The plaintiff was notified as early in the case as we could. At the very beginning of discovery, they had the wrong defendant. They could have looked at the CD itself and seen they had the wrong defendant. All the publicly available information told them we were just a holding company and not the right defendant. The district judge gave them . . . urged them to serve the other defendants they named. They chose for whatever reason not to even attempt to do that. Then they waited until the very end of discovery to even take a deposition to begin the process of, in their view, figuring out who the proper defendant was, though it was right on the CD. Statute of limitations, Ron? I'm not sure what we would run from here. Well, I mean, I think that in the course of an ordinary song's life, there are fewer and fewer performances of it, fewer and fewer purchases, and the revenue stream would be minimal. So if there was no collateral estoppel here and they could refile, the statute of limitations would certainly limit their damages. It might foreclose the case altogether, but . . . What about bringing in a particular defendant? Would there be a statute of limitations problem with a particular defendant being substituted? I think there very well might be. It would depend on who they brought in. But, you know, the court can also equally discern this based upon the merits, because this is a case where the court's established precedents right down the line show that this case was properly decided on summary judgment, starting with this whole issue of the sound recording and the composition. Your Honor is correct. There was no sound recording copyright registration attached to the complaint. That would be an SR filing, not a PA. But even if there had been, there was no evidence in this case that the actual sounds of the plaintiff's recording were copied by the defendant's recording. That's, you know, basic sound recording law from the Copyright Act. It's a Newton v. Diamond case that Judge O'Scanlan, I believe, you wrote. So clearly, even if there had been a registration for the recording attached, it wouldn't have mattered.  Exactly. And it sounds like, Your Honor, listen to the recording. Clearly, the sounds weren't copied, and there was no evidence of sounds. We have sampling cases and things like that where you can see. Like the Napster case, for example, where obviously the defendants, the defendants there had copied the actual recordings from the plaintiffs. So that brings you to the issue of access. And again, we have a case that Judge O'Scanlan wrote that's directly on point, the Rice v. Fox case, where you have an even greater showing of access in that case, which the court found was not only not sufficient, but was not even sufficient to trigger the inverse ratio rule. You had 19,000 or 17,000 copies in that case sold. Here you had 2,000 copies of the plaintiff's CD that were sold or given away or warehoused. You had a case there where the, I think in the. I'm confused. Why do we need to talk about access? Well, because on the issue of access, you have a couple of different ways the plaintiff could prove access, and here the plaintiff failed on every front. More directly, the plaintiff tried to show access here by showing what Judge O'Scanlan called a very complex. Access to what? Are we talking about to the song? Access. The defendants, obviously my client had no access, but the access of the songwriters here, Mr. Newman and Mr. Booker, to the plaintiff's song. And the plaintiff's song was very limited in distribution, and the primary way the plaintiff tried to show access here was, as I said, through what Judge O'Scanlan called in the Rice case a very complex and intricate web of inferences. And, again, you have no evidence here that Mr. Swain, who they sent a copy of the plaintiff's song to, ever provided it to the songwriters, knew the songwriters, ever provided it to anybody else. So the access argument here failed on summary judgment just as it did in. I'm sorry. Access to the recording, are we talking about? The defendant's access to the plaintiff's recording or the plaintiff's song in any way. So that's one area where the district court sustained a grand summary judgment and the court could sustain on that ground alone. Independently, if you even reach the issue of. So this is an alternative ground to the copy ground? Right. They would have to show both access and substantial similarity, because an independent similar creation wouldn't be infringing. So you're saying even if they could show that there was similarity, they would have to show access. They would have to show, yes, some degree of access. And here, based upon the Rice case and other cases, the level of access here did not rise to the level that you create a tribal issue. Counsel, you recall my question to your opposing counsel about the contact with Mr. Swain. What's your response to that? As I recall, Mr. Mann said that it's quite reasonably, quite reasonable that the song got from Swain to Island Records. What's your response to that? Well, quite reasonable is speculation and conjecture, not evidence. They could have taken Mr. Swain's deposition and found out what he did with the song, and they didn't. They have no evidence that he provided the song. Again, I hate to keep going back to the Rice v. Fox case, but in preparing for the hearing, it's remarkably on point. In that case, Judge O'Scanlan, the plaintiff had evidence that they had sent, that their agent had sent a copy of the plaintiff's work to Fox. But they had no evidence that the actual copy got into the hands of the people who made the defendant's work. So while they gave it to Mr. Swain, there's nothing in this record whatsoever that suggests that Mr. Swain even knew Mr. Newman and Mr. Booker, the songwriters of the defendant's song here, let alone gave them a copy of the song or gave anyone else a copy of the song. Now, the plaintiff could have tried to pursue that issue in discovery, but for whatever reason she chose not to. And so the district court was absolutely entitled to find that this claim simply failed for lack of evidence. What did Swain get? He got an e-mail containing an MP3 of the plaintiff's song. This is back in 2007. He responded by saying, it sounds good, or something like that. And based upon that alone, they surmise that, well, theoretically, he possibly could have then taken that and given that to somebody else who gave it to the songwriters. And six years later, the defendant's song came on. That's clearly not enough under the established law for a claim of copyright infringement to get to a jury. And, again, so getting to the issue of substantial similarity, the ---- That issue was not decided by the court, correct? It was decided by the court. It was decided by the court. Yeah. The district court concluded correctly, based upon the evidence we presented, that the phrase, I need to know now, is not copyrightable. The complaint that the appellant now makes is that, well, the district court should have considered the declaration of the plaintiff in opposition to summary judgment where she listed a variety of similarities. And there are numerous problems with that argument. The first problem with it is that the district court could easily, and this Court could easily disregard that affidavit because it contradicted her deposition. At her deposition, I blocked her out completely on the issue of whether the music was similar because she had no experts. So we went ahead and created musical transcriptions of the two choruses of the songs, the parts that she said were substantially similar. We presented those to her at her deposition. She agreed with one minor change she made, that those were accurate transcriptions. And then I asked her about the choruses and whether the notes or the chords were the same, and she said, no, that's not what I'm claiming they copied. And I moved on. I mean, I felt that was sufficient to move on, and we focused the claim on the lyrics. And the district court correctly found the lyrics weren't original. So I think that a declaration in opposition to a summary judgment motion that suddenly says, oh, I've now looked back and I find a bunch of other similarities is disregarded But do we have to get there? I mean, that's to me that's the closer issue in terms of the declaration that was submitted. Yeah. No, you don't get there as long as you find that access, agree with the district court that the access evidence here was wanting, and you find they sued the wrong defendant. Did the district court consider the declaration? The district court didn't address the declaration. And admittedly, it's unclear why, but I think there are two possible reasons, both justifiable. One is that the district court agreed it wasn't an appropriate declaration in that circumstance because we presented evidence that she had said in her deposition, I'm not claiming that part was copied. In addition, a list of similarities, and again, going back to the Rice v. Fox case, a list of similarities standing alone is not sufficient to meet a plaintiff's evidentiary burden on summary judgment, because if you're going to base your claim on a list of similarities, for example, the very first similarity she claims is both songs were in 4-4 time. I don't know that much about music, but I do know that almost every song is in 4-4 time, a huge percentage of songs. So clearly, 4-4 time is not a copyrightable element of a song. If the plaintiff is going to argue, in this case or any case, that a confluence of uncopyrightable elements and their selection and arrangement are somehow copyrightable, which is permissible in certain circumstances, if a plaintiff is going to argue that, then the plaintiff has to present something more than just a list of similarities, for example, expert testimony or some proxy for expert testimony, which I've never seen in my years of doing this, but I suppose a learned treatise or in the future a computer program that can analyze songs. I mean, there may be various ways without an expert to do it, but clearly the plaintiff didn't do it here, a list of similarities just as the expert tried to do in Rice v. Fox, Judge O'Scanlan, a list of similarities is not enough for the district court to engage in the filtering analysis that it would have to do, and it's certainly not sufficient for a plaintiff just to say, here's a bunch of similarities, district court, you go figure out what's copyrightable, what's not, what's original, what's not, and none of that was done here. All right. So unless the Court has any other questions, I thank you. Appears not. Thank you, counsel. Brutal? Yes, thank you, Your Honor. Counsel's argument goes directly to one of the primary issues here. Ms. Apps did not say that there are no similarities in the sound. The actual deposition question asked to her was, is she alleging that her song was sampled? Sampled. That's an entirely different question than what my opponent just mentioned. So that's addressed in our brief. You have to look at the actual deposition testimony. Second thing, the recent cases in the Marvin Gaye case and the Skidmore, the Zeppelin case. Sampling means taking the actual recording. Exactly. Exactly. You're making a literal copy of the recording as opposed to emulating it with your own music and songs and instrumentation. That was the question that was asked of her. She truthfully said, and that addresses why we did not, going back to it, why we did not put the sound recording copyright in our complaint. We've never alleged that they actually made a copy, like a phony CD. But when they started saying that the only similarities are the words, we said no. We also have the sound recording. So that explains why it wasn't put into the complaint. That was sort of to refresh my recollection. Second question here is, the reason we put the evidence in of the similarities is not just to say, court, you figure it out. That was to meet our obligation under the extrinsic test. It's our obligation under the two-part test to point out what objective, factual similarities exist between the songs before you get to the intrinsic test of how does this sound to a listener. That is why we put that into her declaration. She was never asked about that in her deposition. They simply asked, are you alleging that this song was sampled? She truthfully said no. They never said, tell me why you think your songs are similar. Identify all similarities that you contend exist between the songs. Those questions were never asked at deposition. So her declaration does not contradict that. Final issue is one that I think may be a first impression in this court. We raise it in our brief, is whether expert testimony is an absolute requirement of cases of this sort. If you actually look back into the cases, the Three Boys v. Bolton case said that expert testimony is often required. The original holding, and this was not even central to the case. This was all dicta. The Bolton case said expert testimony is often required. Now it has been transformed into it is always required. It's sort of like that game or telephone where you repeat something, people repeat it to each other, and by the time it comes around, it's a very totally different than what it started with. So case of first impression here, whether expert testimony is required in these on that particular issue, and this may be an opportunity for this court to do so if it chooses. I want to thank you for your attention. Thank you, Your Honor. Thank you, counsel. Thank you to both counsel. The case as argued is submitted for decision by the court. That completes our calendar for the morning. We are on recess until 9 a.m. tomorrow morning. 9 a.m. All rise.
judges: Schroeder, O'scannlain, Rawlinson